# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALSTON RAY CAMBELL, JR.,<br><br>Defendant. | No. 17-CR-2045-LRR<br><br>**REPORT AND RECOMMENDATION** |

_____

## I. INTRODUCTION

This matter is before the Court on Alston Ray Campbell, Jr.'s ("defendant") Motion to Suppress Title III Wiretap Evidence. (Doc. 115). The Honorable Linda R. Reade, United States District Court Judge, referred the motion to me for a Report and Recommendation.

While investigating a suspected drug trafficking organization, the Government obtained a series of related wiretaps, some of which authorized the Government to monitor defendant's communications. Defendant initially argued that the evidence obtained as a result of the wiretaps should be suppressed because the Government failed to prove that the wiretaps were necessary and because the Government failed to properly minimize the wiretaps. (Doc. 115-1). Importantly, defendant argued that the entire wiretap, not just individual communications, should be suppressed because of a pattern of improper minimization. The Court heard argument on January 17, 2018, at which time it became apparent that the parties were unprepared to address the minimization

issue. Therefore, I reserved issuing a Report and Recommendation on the minimization issue and permitted the parties to submit supplemental briefing on the issue.

Defendant timely filed his supplemental brief on January 24, 2018 (Doc. 137), and the Government timely filed its resistance on January 26, 2018. (Doc. 138). In his supplemental brief, defendant was instructed to identify any intercepted communications that he contends were improperly minimized that also contained incriminating information; however, defendant did not identify any such statements. Therefore, I will assume that none of the statements that were obtained as a result of allegedly improper minimization were of an incriminating nature. Given the nature of the issue currently before me and the binding precedent implicated, I find that a hearing on the minimization issue is unnecessary. To the extent a request for oral argument on the minimization issue exists, that request is denied.

## II. BACKGROUND

I previously engaged in a discussion of the factual background of this case and will not repeat that discussion here. (*See* Doc. 135, at 2-9). I will, however, supplement that discussion. Each of the wiretaps at issue included instructions on minimization, and Officer Bryan Furman testified as to the steps that were taken to minimize interceptions of irrelevant communications.

Officer Furman testified that before the monitoring began, Officer Furman and the taint team received instruction from an Assistant United States Attorney on how to properly minimize communications in accordance with the wiretaps. These meetings were repeated each time a new wiretap was issued.

Officer Furman testified that when a communication was first intercepted in this case, whether that communication was a text message or a telephone call, it was reviewed in real time by a taint team in a remote location. If the taint team conducting this initial

review determined that the communication was not relevant, investigators would not have access to the communication. If a phone call was deemed irrelevant, the taint team would stop listening to the call, and the call would not be recorded. If the taint team believed the call could be relevant to the investigation, investigators were given the ability to listen to the call. In listening to such a phone call, the investigator listening to the call would first determine whether the subjects of the call were discussing information relevant to the investigation. If they were not, the investigator would stop listening to the call and instead would spot check the call to determine if the conversation shifted from innocent communications to the subject of the investigation. If the conversation had not shifted, the investigator would again stop listening and would continue spot checking. Officer Furman stated that as the investigation proceeded, investigators learned more about suspects' phone habits and became more adept at determining whether a call was relevant to the investigation. As a result, irrelevant calls were minimized at a higher percentage as the investigation proceeded than they were toward the beginning of the investigation.

Text messages were treated slightly differently because when a text message is intercepted, all of the information contained in the text message is received by the taint team at the same time. As a result, the taint team could not minimize their review of the message to the same extent they could minimize an irrelevant phone call by simply not listening. If a text message was deemed irrelevant, however, it was not passed along to investigators and investigators did not have access to it. As with phone calls, the taint team and investigators became more knowledgeable about the suspected drug trafficking organization's coded language over time and were, therefore, able to refine their interceptions. Line sheets were kept as records of all of the communications investigators had access to, regardless of whether those communications were ultimately deemed relevant.

On January 17, 2018, I held an evidentiary hearing on defendant's motion. That morning, defendant produced to the Government and me a binder with hundreds of telephone calls and texts he alleged were improperly minimized. None of these phone calls contained incriminating statements.

### III. ANALYSIS

The federal wiretap statute requires that interceptions must "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 28 U.S.C. § 2518. Defendant contends that the remedy should be complete suppression of the evidence obtained, not just suppression of those communications that were improperly minimized. Defendant would have me recommend that the Court hold that the Eighth Circuit is an outlier with respect to the remedy provided when a wiretap is improperly minimized. I am, however, bound by the Eighth Circuit Court of Appeals, as is the District Court. As a result, my recommendation must follow the current law of the Eighth Circuit.

The Eighth Circuit has spoken on the issue directly implicated in this case:

> [E]ven if the surveillance in this case did reflect a failure to minimize, it would not follow that Congress intended that as a consequence all the evidence obtained should be suppressed. Quite the contrary, 18 U.S.C. § 2517 manifests an intent to utilize *all* the evidence obtained by eavesdropping, and § 2517(5) expressly permits the use in court of evidence obtained by wiretap of a crime other than the crime upon which the court order was premised. Clearly Congress did not intend that evidence directly within the ambit of a lawful order should be suppressed because the officers, while awaiting the incriminating evidence, also gathered extraneous conversations. The nonincriminating evidence could be suppressed pursuant to 18 U.S.C. § 2518(10)(a), but the conversations the warrant contemplated overhearing would be admitted. If appellants, and the unindicted persons whose conversations were overheard, have any remedy under Title III other than the suppression of conversations outside the

> warrant's scope, it lies in § 2520 as a civil suit against the investigating officers alleging that they exceeded their authority.

*United States v. Cox*, 462 F.2d 1293, 1301-02 (8th Cir. 1972) (emphasis in original) (footnote and citations omitted); *accord United States v. Ozar*, 50 F.3d 1440, 1448 (8th Cir. 1995). In the Eighth Circuit, only individual communications that were improperly minimized are subject to suppression. *Cox*, 462 F.2d at 1301-02.

Defendant argues that "the Eighth Circuit's suppression analysis is wholly inconsistent and in logical conflict with the legislative intent." (Doc. 137, at 10). To support this argument, defendant cites a law review article, Clifford S. Fishman, *The Minimization Requirement in Electronic Surveillance: Title III, the Fourth Amendment, and the Dread* Scott *Decision*, 28 AM. U. L.REV. 315, 316 (1979). Defendant further argues that "[t]he Eighth Circuit has long been isolated on one end of the spectrum from other jurisdictions." (Doc. 137, at 6). In support of this argument, defendant cites two district court decisions from other districts and one decision from the Second Circuit Court of Appeals: *United States v. Simels*, No. 08-CR-640 (JG), 2009 WL 1924746, at *6 (E.D.N.Y. 2009); *United States v. Focarile*, 340 F. Supp. 1033, 1047 (D. Md. 1972) (which defendant asserts was later affirmed by the Fourth Circuit Court of Appeals); *United States v. Principie*, 531 F.2d 1132,[1] 1140 (2d Cir. 1976). (Doc. 137, at 7-9).

In the law review article defendant cites, the author argues that "it hardly benefits the accused if the judge suppresses only those conversations that the prosecutor had no intention of using against him" but does not suppress incriminating statements in improperly minimized calls. Fishman, 28 AM. U. L. REV. at 351-52. The author points out that other courts have held that "[w]here monitors blatantly disregard the minimization provision, all conversations, pertinent as well as nonpertinent, must be

---

[1] Both defendant and the government incorrectly cite this decision as beginning on page 1131, as opposed to page 1132.

suppressed." *Id.*, at 352. The only cases the author cites to support this proposition, however, are two state court decisions. *Id.*, at 352 n. 214. In any event, there has been no showing in this case that the agents blatantly disregarded the minimization requirements; to the contrary, I find, based on the evidence before me, that the agents were fully informed of the requirement, were properly instructed on how to comply, and took reasonable efforts to do so.

The cases defendant cites do not support his position. *Simels* is easily distinguishable. In that case, "[t]he failure to monitor in this case was total, as the intercepting agents 'put down their headphones' as soon as recording began." 2009 WL 1924746, at *14. That was not the case here. The language defendant relies on in *Focarile* is dictum; the Court opined that total suppression could be appropriate, but found there that the minimization was appropriate. *Focarile*, 340 F. Supp. at 1044-50. The district court did suppress the wiretap evidence for other reasons, however, and it is on that basis, and not on the issue of minimization, that the Fourth Circuit Court of Appeals affirmed the district court. *See United States v. Giordano*, 473 F.2d 906 (4th Cir. 1973); *United States v. Giordano*, 469 F.2d 522 (4th Cir. 1972). Finally, the Court in *Principie*, discussed *Focarile*, but rejected the remedy of total suppression and held that "only those conversations which were seized in violation of the time limitation in the order had to be suppressed." 531 F.2d at 1141.

Defendant cites other decisions from the 1970s by other courts not binding on this Court for the proposition that there is a "hybrid approach," whereby courts suppress the entire wiretap where there is "flagrant disregard" of the minimization requirements, but only suppress individual interceptions where only "isolated instances" of the failure to minimize can be found. (Doc. 137, at 9). Again, defendant's cited authorities do not support his position. In *United States v. Santora*, the court found the district court did not err in failing to order an evidentiary hearing on defendant's claim that the government

6

failed to properly minimize the interceptions where the "district court found that the agents had acted in good faith and in exercise of ordinary care and judgment in trying to minimize the interceptions."  600 F.2d 1317, 1320 (9th Cir. 1979).  There is no discussion in *Santora* about suppression of the entire wiretap evidence.  In *United States v. Hyde*, the court held that "the minimization requirements of both Federal and Florida law were fully met by the conduct of the agents in this case;" again, there is no discussion in this case about suppression of the entire wiretap as a result of failing to minimize properly.  574 F.2d 856, 870 (5th Cir. 1978).  In *United States v. Turner*, the court stated in dictum that "[i]n a case where it is clear that the minimization provision of the order was disregarded by the Government throughout the period covered by the order, a total suppression might well be appropriate," but found no such disregard in that case.  528 F.2d 143, 156 (9th Cir. 1975).  In *United States v. Webster*, the court cites the Eighth Circuit's decision in *Cox* with favor and rejects the proposition that the entire wiretap should be suppressed, at least when there is "no evidence that the officers conducting the interception failed to comply with the general minimization requirements . . .."  473 F. Supp. 586, 598 (D. Md. 1979).

In short, defendant has not cited a single decision where a court has suppressed an entire wiretap based on a failure to properly minimize the interception of communication.  At most, defendant has cited dicta, nothing more, to support that position.  I, too, could contemplate a situation wherein investigators so flagrantly disregarded the dictates of a minimization order that the entire wiretap should be suppressed.  That is not the case here.  In this case, investigators diligently attempted to minimize all irrelevant communications.  A taint team was established, irrelevant communications were not recorded, spot checking was utilized, and both investigators and the taint team narrowed the scope of those calls that were recorded as the investigation progressed.  Put simply, the evidence before me shows that minimization procedures were properly followed.

Thus, although it is possible that a case could arise that would justify complete suppression of a wiretap, this is not that case.

The last issue before me, then, is whether the court should suppress any individual communications. Defendant does not seek to suppress nonincriminating communications, nor would there be any reason to do so. Such communications would not prejudice defendant and the government would gain nothing by offering nonincriminating, irrelevant communications. Defendant has failed to identify any incriminating communications that defendant alleges were improperly minimized and should, therefore, be suppressed. Defendant bears the burden of proof in persuading the Court to grant his motion to suppress. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Where a defendant has failed to identify the communications he seeks to have suppressed, he cannot be said to have met his burden of proof. Here, defendant has not identified any specific communications he would have this Court suppress. Therefore, I recommend that the District Court deny defendant's motion in its entirety.

## IV. CONCLUSION

For the reasons stated, I respectfully recommend that the District Court **deny** defendant's motion to suppress as to the minimization issue.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to

appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **IT IS SO ORDERED** this 30th day of January, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa