**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ALSTON RAY CAMPBELL, JR.,

        Defendant.

No. 17-CR-2045-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.*  *RELEVANT TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *MOTION FOR JUDGMENT OF ACQUITTAL* . . . . . . . . . . . . . . . . . . . . *4*

     *A.*    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *B.*    *Count 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *C.*    *Count 14* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*V.*   *MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

     *A.*    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
     *B.*    *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *C.*    *Exclusion of Exhibits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
     *D.*    *Jury Instructions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
     *E.*    *Jury Question* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I.  INTRODUCTION

The matter before the court is Defendant Alston Ray Campbell, Jr.'s "Motion for Judgment of Acquittal or, in the Alternative, New Trial" ("Motion") (docket no. 307).

## II.  RELEVANT PROCEDURAL HISTORY

On February 22, 2018, a grand jury returned a Superseding Indictment (docket no.

170) charging Defendant with one count of conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See* Superseding Indictment at 2, 7. On April 20, 2018, a jury trial commenced. *See* April 20, 2018 Minute Entry (docket no. 259). On April 27, 2018, the jury returned a verdict finding Defendant guilty on Counts 1 and 14 of the Superseding Indictment. *See* Jury Verdict (docket no. 277) at 1-4, 16. The jury also found that the objects of the conspiracy as committed by Defendant were to distribute at least five kilograms of cocaine and at least 280 grams of cocaine base. *See id*. at 2-4. On May 11, 2018, Defendant filed the Motion. On May 25, 2018, the government filed a Resistance (docket no. 316). Defendant requests oral argument, but the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

### III.  RELEVANT TRIAL EVIDENCE

Viewed in the light most favorable to the verdict, the relevant trial evidence is as follows:

In 2016, law enforcement began investigating Defendant, as part of a larger narcotics investigation. J.P., a cooperating witness, made a series of four controlled cash payments to Defendant. J.P. informed law enforcement, and later testified at trial, that these payments were reimbursement for narcotics that Defendant had advanced to J.P. for retail sale. All of J.P.'s meetings with Defendant were captured on an audio recording device. Additionally, law enforcement was able to take photographs of Defendant during two of the payments. Defendant later agreed via telephone to sell one ounce of cocaine to J.P., but never arrived at the arranged location to make the sale. Another cooperator, N.S., testified that he purchased cocaine and cocaine base from Defendant on multiple occasions. An additional cooperator, A.M., testified that he witnessed Defendant deliver a kilogram of cocaine to another retail dealer.

Law enforcement subsequently conducted a Title III wiretap of Defendant's phone, as well as the phones of several other members of the drug conspiracy. Defendant used coded language to communicate with numerous individuals, including his brother, co-defendant William Marcellus Campbell, and his father, co-defendant Alston Ray Campbell, Sr., about their drug business. They used seemingly innocuous references to things such as food and clothing, but in ways that did not make sense in the context of the conversation. Task Force Officer Bryan Furman testified that this indicated that the conversations were actually about narcotics. Officer Furman explained that this kind of coded language is frequently used by narcotics traffickers who are concerned that their communications may be intercepted by law enforcement. Further, the intercepted communications demonstrated that Defendant and Campbell, Sr. were aware that they were targets of a narcotics investigation, as they made reference to the "task," i.e. the Tri-County Drug Task Force, conducting surveillance of Defendant's vehicle.

Additional intercepted communications revealed the scope of Defendant's drug activity. Law enforcement intercepted communications between Defendant and a major narcotics supplier in Texas. Defendant discussed sending the supplier $63,000, which represents approximately four pounds of cocaine. Through continued monitoring of Defendant's phone, law enforcement learned of a plan to send money to the Texas supplier in March of 2017. Law enforcement observed Defendant meeting with an associate who was to transport the money. The next day, law enforcement conducted a traffic stop of the associate and seized $19,600 in cash from her vehicle. After the seizure, law enforcement intercepted communications between Defendant and the Texas source discussing the loss of the seized cash.

Law enforcement then executed several search warrants in connection with the investigation. At Defendant's residence, law enforcement discovered firearms, ammunition, equipment to convert cocaine into cocaine base with cocaine residue on it,

materials for packaging cocaine for retail sale and chemicals commonly used as cutting agents in cocaine. At Defendant's storage unit, they found mail addressed to Defendant and a coffee can with a false bottom, which contained approximately thirty-seven grams of cocaine base, four grams of powder cocaine and cutting agents. At another residence commonly used by Defendant and his family members, law enforcement found cocaine residue on a scale and on mixing equipment, packaging materials and a bag of marijuana residue with Defendant's fingerprint on it.

## IV. *MOTION FOR JUDGMENT OF ACQUITTAL*

At the close of the government's case, Defendant timely moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). Defendant now renews his motion as to Counts 1 and 14. With respect to Count 1, Defendant argues that "the [g]overnment failed to offer any evidence that [Defendant] voluntarily or intentionally joined in any agreement for the distribution of cocaine or cocaine base." Brief in Support of Motion (docket no. 307-1) at 8. With respect to Count 14, Defendant argues that "[t]he [g]overnment failed to produce any evidence of [his] knowledge of the controlled substance to . . . sustain a theory of constructive possession." *Id*. at 11. The court shall address each argument in turn.

### A. *Legal Standard*

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor.

*See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *See id*. Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *See United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

### B. Count 1

In the Motion, Defendant argues that "[e]ven when reviewing the evidence in the light most favorable to the [g]overnment, the [g]overnment failed to provide sufficient evidence to support a conviction of [Defendant] on Count 1." Brief in Support of Motion at 8. Defendant further argues that "the [g]overnment failed to offer any evidence that [he] voluntarily or intentionally joined in any agreement for the distribution of cocaine or cocaine base." *Id*. Defendant acknowledges that "[J.P.] testified in corroboration with the [g]overnment's allegation," but statess that "[J.P.'s] testimony wholly lacked credibility." *Id*. at 9. Defendant also acknowledges that N.S. testified to Defendant's participation in an ongoing drug conspiracy, but states that "[N.S.'s] testimony lacked even an indicia of reliability." *Id*. at 10.

Even assuming, contrary to the evidence outlined above, that the testimony of J.P. and N.S. constituted the entirety of the government's case, Defendant's argument must fail. Defendant offers no legal argument that the conduct described by the witnesses does not constitute a crime, nor does he point to any element of the charged crime for which no evidence was offered. Instead, Defendant asks the court to find that J.P. and N.S. were not credible, to discount their testimony and then to find that, without it, the government's case was insufficient. This argument is contrary to the legal standard for a motion for judgment of acquittal. "A trial court has neither the duty nor the authority to grant a

motion for acquittal based on the credibility of a witness." *United States v. Seibel*, 712 F.3d 1229, 1237 (8th Cir. 2013) (quoting *United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001)); *see also United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004) ("In ruling upon a motion for judgment of acquittal, the district court is not to weigh the evidence or assess the credibility of witnesses."). Thus, the court cannot engage in the kind of credibility evaluation that the Motion calls for. Accordingly, the court shall deny the Motion as to Count 1.

### C. Count 14

Defendant asserts that "the [g]overnment failed to provide sufficient evidence to sustain a conviction . . . [as] to Count 14 for possession with intent to distribute cocaine." Brief in Support of Motion at 11. Specifically, Defendant argues that "[t]he [g]overnment failed to produce any evidence of [Defendant's] knowledge of the controlled substance to . . . sustain a theory of constructive possession." *Id*. "Constructive possession is defined as knowledge of [the] presence of the contraband plus control over the contraband." *United States v. Wright*, 739 F.3d 1160, 1168 (8th Cir. 2014). "Evidence showing a person has 'dominion over the premises in which the contraband is concealed' establishes constructive possession." *Id*. (quoting *United States v. Ojeda*, 23 F.3d 1473, 1475 (8th Cir. 1994)).

In this case, the government presented sufficient evidence that Defendant maintained dominion over the premises where the cocaine was found. The cocaine was found in a storage unit that Defendant had rented. Mail addressed to Defendant was found inside the storage unit. A receipt for payment on the storage unit was found inside Defendant's residence. There was no evidence that anyone else ever had access to or used the storage unit. These facts indicate that Defendant had exclusive dominion over the storage unit. Additionally, Defendant's own witness testified that she gave Defendant the coffee can, putting him in direct possession. Also, the cutting agents found inside the coffee can were

6

the same cutting agents found inside Defendant's residence. These facts provide additional evidence that Defendant knew the contents of the coffee can and intended to distribute that cocaine. Viewed in the light most favorable to the verdict, this evidence is sufficient to sustain a conviction as to Count 14. Accordingly, the court shall deny the Motion as to Count 14.

## V. MOTION FOR NEW TRIAL

In the Motion, Defendant alleges that four grounds warrant the court granting him a new trial. First, Defendant argues that "the weight of the evidence for both Count 1 and Count 14 is against the verdict." Brief in Support of Motion at 13. Second, Defendant argues that the court's evidentiary rulings denied him a full opportunity to confront the witnesses against him. *See id*. Third, Defendant argues that "failure to instruct the jury as to the proposed multiple conspiracy instruction caused a miscarriage of justice." *Id*. Fourth, Defendant argues that "the jury's note requesting clarification on calculating drug quantity, and subsequent answers to special interrogatories, exhibit jury confusion in the instructions and caused a miscarriage of justice." *Id*. The court shall address each argument in turn.

### A. Legal Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant a Rule 33 motion is within the sound discretion of the [d]istrict [c]ourt . . . ." *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (quoting *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004)). "When considering a motion for a new trial, a district court may 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *Id*. (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). However, "[m]otions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Morris*,

817 F.3d 1116, 1121 (8th Cir. 2016) (quoting *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012)). "Trial courts should 'exercise the Rule 33 authority sparingly and with caution.'" *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *Campos*, 306 F.3d at 579).

### B. Weight of the Evidence

Defendant argues that the court should grant him a new trial as to Counts 1 and 14 because "[t]he weight of the evidence is contrary to the trial result." Brief in Support of Motion at 14. With respect to Count 1, Defendant argues that "the inconsistencies and biases of the cooperating witnesses caused their testimony to wholly lack reliability." *Id.* Defendant also argues that law enforcement neither "observed [Defendant] handling cocaine or cocaine base" nor had cooperators make controlled purchases from him. *Id.* at 15. With respect to Count 14, Defendant reiterates his argument that "the [g]overnment failed to provide any significant evidence of [his] knowledge" with regard to his possession of cocaine. *Id.*

"Motions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. The "court should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)). In this case, the court has weighed the evidence and finds that it is sufficient to support the verdicts on Counts 1 and 14. With respect to Count 1, the court finds that the cooperating witnesses did not so lack credibility as to render Defendant's conviction a miscarriage of justice. Rather, the court finds that the cooperating witnesses were credible, and that their testimony was consistent with, and bolstered by, the physical evidence seized, the observations of law enforcement witnesses and the extensive evidence obtained through the wiretap. With respect to Count 14, the court finds that the government presented substantial evidence as to Defendant's constructive possession of the cocaine in question. The court has weighed this evidence and finds that it does not weigh

heavily enough against the verdict that a miscarriage of justice may have occurred. Accordingly, the court shall deny the Motion as to this issue.

## C. *Exclusion of Exhibits*

During trial, Defendant sought to admit into evidence written copies of the cooperating witnesses' plea agreements ("Agreements") with the government. Defendant also sought to introduce a letter ("Letter") J.P. wrote to the father of Defendant's fiancé apologizing for testifying against Defendant. The government objected that the documents contained information that would impermissibly inform the jury of the possible penalties Defendant faced if convicted. The court sustained the objections and refused to admit the Agreements and the Letter into evidence. Defendant now argues that "a miscarriage of justice occurred when exhibits offered by [Defendant] showing the bias and motives of [g]overnment witnesses [were] excluded," violating his rights under the Confrontation Clause. Brief in Support of Motion at 15-16. Defendant further argues that the Agreements "were essential in examining the witnesses' credibility and motivations" and that without the Letter in evidence "the jury could not properly evaluate [J.P.'s] credibility." *Id*. at 16.

"The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right 'to be confronted with the witnesses against him.'" *United States v. Clay*, 883 F.3d 1056, 1061 (8th Cir. 2018) (quoting *United States v. Brown*, 788 F.3d 830, 833 (8th Cir. 2015)). "The primary purpose of this right is to guarantee the opportunity for effective cross-examination, particularly with respect to a witness's potential bias." *Brown*, 788 F.3d at 833 (quoting *United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009)). "A limitation on cross-examination does not violate the Sixth Amendment's Confrontation Clause unless the defendant demonstrates that a reasonable jury might have received a significantly different impression of a witness's credibility if counsel had been allowed to pursue the proposed line of cross-examination." *United States v. Peebles*, 883 F.3d 1062, 1070 (8th Cir. 2018).

In this case, Defendant was able to cross-examine the cooperating witnesses about the Agreements and the fact that they were facing significant potential sentences and/or mandatory minimum sentences without those agreements. The court finds that entering the Agreements into evidence would not have given the jury a significantly different impression of the witnesses' credibility. *See United States v. Wright*, 866 F.3d 899, 906 (8th Cir. 2017) (holding that a district court does not abuse its discretion when it excludes details of a cooperating witness's plea agreement where such evidence would not have given the jury "a significantly different impression of the witness's credibility" (quoting *United States v. Dunn*, 723 F.3d 919, 934 (8th Cir. 2013))). Similarly, J.P. admitted on cross-examination that he had written the Letter and acknowledged what he had written. Thus, admitting the Letter into evidence would not have given the jury a significantly different impression of his credibility. Therefore, the documents were properly excluded. Accordingly, the court shall deny the Motion as to this issue.

### D. *Jury Instructions*

Prior to trial, Defendant requested that the court instruct the jury on multiple conspiracies using Eighth Circuit Model Criminal Jury Instruction 5.06B ("Multiple Conspiracies Instruction"). *See* Proposed Jury Instructions (docket no. 249) at 48-49. The court found that the Multiple Conspiracies Instruction was not supported by the evidence and declined to read it to the jury. Defendant now asserts that "the [g]overnment failed to connect the co-defendants to one conspiracy," but rather "relied on the co-defendants being family to prove the agreement." Brief in Support of Motion at 17. Defendant argues that "[w]ithout the proper instruction to keep separate conspiracies separate, there was no safeguard against the jury transferring the guilt of those participating in one conspiracy to another." *Id*. at 18.

"A defendant is entitled to a specific jury instruction 'that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law.'" *United States v. King*, 898 F.3d 797, 807 (8th Cir. 2018) (quoting

*United States v. Cruz-Zuniga*, 571 F.3d 721, 725 (8th Cir. 2009)). "When the evidence supports the existence of a single conspiracy, a court does not err in denying a request for a multiple conspiracy instruction." *United States v. Perez-Trevino*, 891 F.3d 359, 372 (8th Cir. 2018). "A single conspiracy is not converted to multiple conspiracies simply because different defendants enter a conspiracy at different times or perform different functions. Nor does 'the fact that different individual defendants . . . participated in numerous separate transactions . . . convert a single conspiracy to multiple conspiracies.'" *Id*. (second alteration in original) (citations omitted) (quoting *United States v. Maza*, 93 F.3d 1390, 1398-99 (8th Cir. 1996)). "Whether trial evidence established a single conspiracy is determined by the totality of the circumstances, including consideration of the nature and location of activities and events, identities of the co-conspirators, and the time frame in which the acts occurred." *United States v. Trotter*, 837 F.3d 864, 869 (8th Cir. 2016) (quoting *United States v. Sanchez*, 789 F.3d 827, 835 (8th Cir. 2015)).

In this case, the evidence supported the existence of a single conspiracy. The witnesses described a conspiracy to distribute cocaine and cocaine base. All of the activities described took place in and around Waterloo, Iowa, or were in furtherance of distributing cocaine and cocaine base in Waterloo. The conspiracy was ongoing from mid-2015 until early 2017. There were numerous individuals involved in the conspiracy, including many of the cooperating witnesses, but Defendant, W. Campbell and Campbell, Sr. were consistently described as the central figures of the conspiracy. The evidence did not support the existence of multiple conspiracies, and the court correctly declined to give the Multiple Conspiracies Instruction. Accordingly, the court shall deny the Motion as to this issue.

### E. Jury Question

During deliberations, the jury sent a note ("Question") to the court requesting clarification of Instruction 20. The Question read, "When considering the total amount of drugs, do we add all the drugs [and] consider it as one total for each one in the

11

conspiracy? Or do we separate the amounts for each individual?" Jury Question and Answer (docket no. 278) at 2. The court advised the jury that the answer was "contained in the jury instructions, verdict forms and interrogatory forms." *Id*. at 1. The jury then returned verdicts finding Defendant guilty on Counts 1 and 14 and finding that the objects of the conspiracy, as committed by Defendant, were to distribute at least five kilograms of cocaine and at least 280 grams of cocaine base. *See* Jury Verdict at 1-4, 16. Defendant now asserts that the Question and Jury Verdict are in contradiction and "show[] confusion of the jury that prejudiced [Defendant]." Brief in Support of Motion at 18. Defendant argues that "[w]hen [the Question] is considered along with the fact that no [M]ultiple [C]onspiracy instruction was given, clear proof of serious confusion is present and a new trial should be granted." *Id*.

Defendant does not clearly articulate the legal basis for this argument. To the extent that Defendant is arguing that the Question is further evidence that the court should have given the Multiple Conspiracies Instruction, the court has already found that the Multiple Conspiracies Instruction was not appropriate. *See supra* Section V(D). To the extent that Defendant is arguing that the court failed to adequately instruct the jury as to the issue of drug quantity, his failure to make any prior objection to the jury instructions, verdict forms and/or interrogatory forms constitutes a waiver of that argument. *See United States v. Sorenson*, 611 F.2d 701, 702 (8th Cir. 1979) ("Failure to object to jury instructions at the time of trial constitutes a waiver of the objection."); *see also* April 12, 2018 Order (docket no. 251) (advising the parties that failure to object to the court's proposed instructions and forms would constitute a waiver).

Defendant cites *Stump v. Bennett*, 398 F.2d 111, 119 (8th Cir. 1968) for the proposition that evidence of juror confusion warrants the granting of a new trial. *See* Brief in Support of Motion at 18. Defendant misreads the holding in *Stump*. In *Stump*, the Eighth Circuit Court of Appeals granted a writ of habeas corpus to a state court defendant based on a defect in the jury instructions during his trial. *Stump*, 398 F.2d at 116. The

court found that those instructions described the burden of proof so contradictorily "as to offend the due process clause" because a jury could not help but be confused by them. *Id*. Thus, *Stump* provides that defective jury instructions may warrant a new trial. As described above, Defendant has waived this issue. Nothing in *Stump* suggests that extrinsic evidence of jury confusion can warrant a new trial.

Moreover, the court finds that the Question does not suggest that the jury was confused or that it did not follow the law in rendering its verdicts. The question asked for more detail about a specific instruction, and the court's response informed the jury that the answer was contained within the totality of the instructions, verdict forms and interrogatory forms, which the court instructed the jury to reread. Defendant raised no objection to this instruction by the court. "A jury is presumed to follow its instructions." *United States v. Thomas*, 877 F.3d 1077, 1079 (8th Cir. 2017) (quoting *United States v. Myers*, 503 F.3d 676, 683 (8th Cir. 2007)). The court, therefore, presumes that the jury did reread all of the instructions, verdict forms and interrogatory forms, realized that the answer to its question was within those materials and was able to come to a unanimous verdict. There is no evidence to suggest otherwise. Accordingly, the court shall deny the Motion as to this issue.

## VI. CONCLUSION

In light of the foregoing, the Motion (docket no. 307) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 1st day of October, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA